IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATASHA BELSER,                     x

           Plaintiff,           :

vs.                           : CIVIL ACTION FILE
                               NO.1:12-cv-

LIFE UNIVERSITY, INC., and    :
DR. MICHAEL ABBATINOZZI,

                               :

           Defendants.
_____x

## COMPLAINT

Plaintiff, Natasha Belser, by and through her counsel of record, Robert N. Marx of Marx & Marx, L.L.C., as and for her Complaint, respectfully alleges as follows:

## PARTIES

1.

Plaintiff, Natasha Belser (hereinafter "Plaintiff" or "Ms. Belser") is a natural born United States citizen residing within the Northern District of Georgia.

2.

Ms. Belser is African American of black color.

1

3.

On information and belief, Defendant, Life University, Inc. (hereinafter "Life University" or "the University") is a domestic corporation doing business in the Northern District of Georgia.

4.

On information and belief, Life University's principal place of business is located at 1269 Barclay Circle, Marietta, GA 30060.

5.

On information and belief, Life University is in the business of higher education and operates a school of chiropractic medicine in Marietta, Georgia under the same name.

6.

On information and belief, Life University receives federal monies so as to make it subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 – 1688.

7.

On information and belief, Life University employed at least fifteen (15) persons at all relevant times and is engaged in an industry affecting interstate commerce.

8.

On information and belief, the registered agent for service of process on Life University is Sharie Moore, 1269 Barclay Circle, Marietta, GA 30060.

9.

Defendant Dr. Michael Abbatinozzi a Caucasian natural person employed as a professor by Life University, and may be served at Life University as his place of employment.

10.

Defendant Dr. Michael Abbatinozzi is Caucasian.

JURISDICTION

11.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343 in that this is an action to recover damages for violation of an Act of Congress providing for equal rights of citizens.  The jurisdiction of this Court is also invoked pursuant to 42 U.S.C. §1981 and Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 – 1688.  The jurisdiction of this Court is also invoked pursuant to 42 U.S.C. §§2000e *et seq* ("Title VII").

VENUE

12.

Venue is appropriate pursuant to 28 U.S.C. §1391 in that the Northern District of Georgia is the judicial district in which a substantial part of the events giving rise to this claim occurred.

NATURE OF THIS ACTION

13.

This is a complaint of unlawful discrimination on the basis of Plaintiff's sex (sexual harassment), race (racial harassment) and color, and for unlawful retaliation. The complaint seeks declaratory and permanent injunctive relief and damages for redress of rights secured to Plaintiff by 42 U.S.C. §§2000e *et seq* ("Title VII"), 42 U.S.C. §1981 and Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 – 1688. Plaintiff also seeks an award of attorneys' fees and costs, pursuant to 42 U.S.C. §1988. The complaint also pleads pendent state causes of action under Georgia common law for assault, battery, intentional infliction of emotional distress, invasion of privacy, breach of contract and negligent retention of an employee.

4

## CONDITIONS PRECEDENT

### 14.

All conditions precedent to invoke the jurisdiction of this Court under Title VII have been met. Plaintiff files this suit within ninety (90) days of receipt of a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC").

## FACTS

### 15.

At all relevant times and continuing, Ms. Belser was and is a student enrolled at Life University.

### 16.

Commencing in or about April 2009, in addition to being enrolled as a student at Life University, Ms. Belser started working in Life University's Functional Rehabilitation department in April of 2009.  The Functional Rehabilitation department operated a clinic (hereinafter "the clinic").

### 17.

During the course of working at the clinic, Ms. Belser was sexually harassed by Defendant, Dr. Michael Abbatinozzi.  Dr. Michael Abbatinozzi was not Plaintiff's supervisor but a clinic doctor who worked in the clinic and supervised student interns.

18.

Commencing in 2010, Dr. Abbatinozzi would come to Plaintiff while she was working at the clinic and flirt with her, such as for example, rubbing her hands, complimenting her on how she looked in her clothes and on occasions bringing her candy.  On information and belief, on all such occasions that he did this, Dr. Abbatinozzi  did not have any of his own patients in the clinic and thus did not have any legitimate business related reason to be in the clinic.  On all such occasions, Ms. Belser made it clear to Dr. Abbatinozzi that his aforesaid comments were unwelcome.

19.

Even though Dr. Abbatinozzi's comments were unwelcome and despite the fact that Ms. Belser made it clear to Dr. Abbatinozzi that his comments were unwelcome, Ms. Belser was intimidated by the fact that Dr. Abbatinozzi was a professor at the University, especially since on numerous occasions Dr. Abbatinozzi pointedly told her that he was friendly with numerous professors at the University, including, *inter alia*, her immediate supervisors at the clinic.

20.

On one occasion in or about the Spring Quarter of 2010 (April – June 2010),

Dr. Abbatinozzi came into the clinic and asked Ms. Belser to view his Facebook

page because he wanted to show her something.  On his Facebook page Dr.

Abbatinozzi showed Ms. Belser a picture of a black woman he had taken on a trip,

and said that he would like to take Ms. Belser on a trip as well. On another

occasion, Dr. Abbatinozzi said he liked black women, especially dark skinned

black women because they excite him more than white women.

21.

On another occasion in or about the Spring Quarter of 2010 (April – June

2010), Ms. Belser was by herself in the laundry room in the clinic when Dr.

Abbatinozzi opened the door, came up behind her, and forcibly rubbed his penis

against Ms. Belser's back.  Ms. Belser, who had been bending down to open the

dryer, tried to move away in time but was unable to do so.  Dr. Abbatinozzi did not

stop until another student opened the door to the laundry room, at which time Dr.

Abbatinozzi smiled and walked out.

22.

On one occasion in or about the summer of 2010 Ms. Belser asked Dr.

Abbatinozzi if he was concerned that the clinic supervisor, one Dr. Haezebrouck,

would notice that he (Dr. Abbatinozzi) was repeatedly coming to the clinic to

speak to her without any legitimate business reason for being there.  Dr.
Abbatinozzi replied that Dr. Haezebrouck knew why he (Dr. Abbatinozzi) was
there and that Dr. Haezebrouck was not going to say anything.

23.

On one occasion or about August 2010, and in or about January 2011 in
front of another student, Dr. Abbatinozzi made it clear to Ms. Belser that he
wanted a sexual relationship with her and told her that it would help her career as a
student at the University as he was friends with many of the University's teachers
and administrators, including Dr. Haezebrouck.

24.

In or about January 2011 Dr. Abbatinozzi told Ms. Belser that he wanted her
to choose him as her clinic doctor when she would begin her student outpatient
clinic so that he could see her more.

25.

Also in or about January 2011, Dr. Abbatinozzi made comments of an
intimate, sexual, nature to Ms. Belser, such as for example, telling Ms. Belser that
she looked sexy.  Dr. Abbatinozzi made it clear to Ms. Belser that he wanted a
sexual relationship with her and repeated his earlier comment that it would help her
career as a student at the University as he was friends with many of the
University's teachers and administrators, including Dr. Haezebrouck.

26.

Also in or about January 2011, Dr. Abbatinozzi told Ms. Belser that he wanted her to be his girlfriend.

27.

In or about February 2011 Dr. Abbatinozzi repeatedly communicated to Ms. Belser that he wanted to have a sexual relationship with her and asked her to call him after school.  Also during that time, he told Ms. Belser that he liked black women especially dark skinned because they excite him more than white women.

28.

On various occasions, approximately two or three times in or about January/February 2011, Dr. Abbatinozzi called Ms. Belser on the telephone and during the course of the conversations he told Ms. Belser that he was masturbating and encouraged her to do so as well.

29.

On or about March 24, 2011, Dr. Abbatinozzi came to Ms. Belser's residence and pressured her into having sex with him. In an earlier statement, Ms. Belser had stated that this incident occurred in or about mid to late February 2011. That statement was in error and was a result of the University's investigator pressuring Ms. Belser to provide a statement before Ms. Belser had had the

opportunity to consult her telephone records.  Ms. Belser was subsequently able to pinpoint the date after looking at those records.

30.

On that occasion, on or about March 24, 2011, Dr. Abbatinozzi called Ms. Belser at home.  Ms. Belser told Dr. Abbatinozzi that she could not speak to him because she had a headache.  Dr. Abbatinozzi responded that he was good at giving massages, that a massage would be good for her headache, and offered to come to her residence to give her a massage.  Ms. Belser declined the offer.  Dr. Abbatinozzi insisted that he come over and give her a massage, and asked Ms. Belser for her address, which, under pressure, she gave him.

31.

Dr. Abbatinozzi showed up at Ms. Belser's residence about thirty minutes later, with a massage table and massage oils.  When he arrived at the door of her residence, Ms. Belser again declined Dr. Abbatinozzi's offer of a massage, and he again insisted upon giving her a massage, intimidating Ms. Belser into letting him into her residence.

32.

Ms. Belser thereupon sat down on the couch in her living room, indicating to Dr. Abbatinozzi that he could give her a massage in that room.  Dr. Abbatinozzi asked if anyone else was present in the house and Ms. Belser said no. Dr.

Abbatinozzi then told Ms. Belser that he wanted to give her the massage in her bedroom.  Ms. Belser initially rejected Dr. Abbatinozzi's request to go into her bedroom, but consented under pressure after Dr. Abbatinozzi insisted.  When Ms. Belser and Dr. Abbatinozzi were in Ms. Belser's bedroom, Dr. Abbatinozzi pressured Ms. Belser into having sex with him, which though not forced, was unwelcome.

33.

Before he left Ms. Belser's residence that night, he told her not to tell anyone that they had had sex, because he would get in trouble, but that it was not uncommon for teachers to have relationships with their students.

34.

Several weeks after this incident, Ms. Belser told Dr. Abbatinozzi that she had decided not to see him anymore and to end her involvement with him.  Dr. Abbatinozzi made it clear that he did not want Ms. Belser to break up with him. He told her not to tell anyone because there could be consequences such as being kicked out of school or losing her job, or him being fired due to a no student teacher fraternization policy between clinic doctors and students.

35.

On repeated occasions after that conversation, Dr. Abbatinozzi attempted to have Ms. Belser change her mind and continue a sexual relationship with him. Some of these occasions took place when Dr. Abbatinozzi would accost Ms. Belser in the parking lot on the way to her car.  On those occasions, Ms. Belser ignored his repeated attempts to strike up a conversation with her and just got into her car. On other occasions, Dr. Abbatinozzi would try to make eye contact with Ms. Belser in the clinic, which she averted.

36.

On one occasion in or about April 2011 Dr. Abbatinozzi confronted Ms. Belser as she was coming to work in the clinic.  Dr. Abbatinozzi told Ms. Belser that he had not realized that she was still working in the clinic.

37.

On or about July 18/20, 2011, Ms. Belser was told that she no longer had a job at the clinic.  On information and belief, Ms. Belser was fired from her job at the clinic in retaliation for her having refused to have any further sexual relations with Dr. Abbatinozzi.  On information and belief, Dr. Abbatinozzi was friendly with the director of the clinic, Dr. Haezebrouck, and he had fired Ms. Belser at Dr. Abbatinozzi's request.  On information and belief, there was no legitimate reason

to fire Ms. Belser from her job at the clinic and she would not have been fired if she had not refused to have further sexual relations with Dr. Abbatinozzi.

38.

In or about July 2011, Defendant, Dr. Robert Fox accused Ms. Belser of cheating on an exam.

39.

Ms. Belser did not cheat on any exam.

40.

On information and belief, Dr. Fox knew that Ms. Belser had not cheated on an exam, but accused her of having done so at the request of Dr. Abbatinozzi.

41.

On information and belief, Ms. Belser would not have been accused of having cheated on an exam if she had not refused to have further sexual relations with Dr. Abbatinozzi.

42.

As a result of the foregoing allegation, Ms. Belser has been placed on academic probation.

43.

Commencing in or about August 2011, Ms. Belser has been denied an appropriate increase in her financial aid, which she had previously received.  On

information and belief, Ms. Belser has been and continues to be denied such additional financial aid because the director of the financial aid department, one Dr. Schneider, has fabricated rules and regulations unique to Ms. Belser at the request of Dr. Abbatinozzi.  On information and belief, Ms. Belser would not be denied that additional financial assistance if she had not refused to have further sexual relations with Dr. Abbatinozzi.

44.

On or about November 14, 2011, Ms. Belser filed a grievance with Life University alleging *inter alia*, the aforesaid conduct by Dr. Abbatinozzi.

45.

On or about December 9, 2011, Life University issued a report denying Ms. Belser's grievance.

46.

On or about January 23, 2012, Ms. Belser appealed Life University's finding to Dr. McAulay, on information the Executive Vice President and Provost.

47.

Together with filing the aforesaid appeal, Ms. Belser included a written, notarized statement from another employee who had witnessed certain of the above conduct, including the incident wherein Dr. Abbatinozzi had rubbed his penis against Ms. Belser.

48.

On information and belief, Life University never contacted that student.

Instead, within one week, Dr. McAulay denied the appeal and upheld the aforesaid

report, on information and belief without any further investigation.

49.

By its conduct, Defendant Life University ratified and/or condoned the

aforesaid unlawful conduct of Dr. Abbatinozzi.

50.

As a result of all the foregoing, Ms. Belser has suffered and continues to

suffer severe mental anguish and emotional distress.

51.

As a result of all the foregoing, Ms. Belser has suffered and continues to

suffer economic damages, included but not limited to back pay and financial aid.

FIRST CAUSE OF ACTION
(42 U.S.C. §1981, Racial Harassment)

52.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1

through 51 to the same force and effect as if set forth separately herein.

53.

On information and belief, Ms. Belser was targeted for sexual harassment

not only on the basis of her sex but additionally on the basis of her race and color.

54.

Defendant Life University's aforesaid actions violated 42 U.S.C. §1981.

55.

Defendant Life University intentionally discriminated against Plaintiff on the basis of her race or acted with reckless indifference as to whether or not its aforesaid actions did so.

56.

Defendant Dr. Michael Abbatinozzi targeted Plaintiff for sexual harassment not only on the basis of her sex but additionally on the basis of her race and color.

57.

Defendant Dr. Michael Abbatinozzi's aforesaid actions violated 42 U.S.C. §1981.

58.

Defendant Dr. Michael Abbatinozzi intentionally discriminated against Plaintiff on the basis of her race or acted with reckless indifference as to whether or not his aforesaid actions did so.

## SECOND CAUSE OF ACTION
### (Retaliation, 42 U.S.C. §1981)

59.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 58 to the same force and effect as if set forth separately herein.

16

60.

Defendant Life University retaliated against Plaintiff for opposing race discrimination, in violation of 42 U.S.C. §1981.

61.

Defendant Dr. Michael Abbatinozzi retaliated against Plaintiff for opposing race discrimination, in violation of 42 U.S.C. §1981.

<u>THIRD CAUSE OF ACTION</u>
<u>(Retaliation, 42 U.S.C. §§2000e *et seq*. ("Title VII"))</u>

62.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 58 to the same force and effect as if set forth separately herein.

63.

Defendant Life University retaliated against Plaintiff for opposing sex discrimination, in violation of 42 U.S.C. §§2000e *et seq*. (Title VII).

<u>FOURTH CAUSE OF ACTION</u>
<u>(Retaliation, 20 U.S.C. §§1681 – 1688 ("Title IX"))</u>

64.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 58 to the same force and effect as if set forth separately herein.

65.

Defendant Life University retaliated against Plaintiff for opposing sex discrimination, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 – 1688.

## FIFTH CAUSE OF ACTION
### (Assault)

66.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 58 to the same force and effect as if set forth separately herein.

67.

Defendant Dr. Michael Abbatinozzi committed a common civil assault on Plaintiff.

68.

Defendant Life University is liable for Dr. Abbatinozzi's aforesaid unlawful conduct under the doctrine of *respondeat superior* and/or the theory of ratification or condonation, and/or it is proper to impute the aforesaid unlawful conduct of Dr. Abbatinozzi to Defendant Life University.

## SIXTH CAUSE OF ACTION
### (Battery)

69.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 58 to the same force and effect as if set forth separately herein.

70.

Defendant Dr. Michael Abbatinozzi committed a common law battery on Plaintiff.

71.

Defendant Life University is liable for Dr. Abbatinozzi's aforesaid unlawful conduct under the doctrine of *respondeat superior* and/or the theory of ratification or condonation, and/or it is proper to impute the aforesaid unlawful conduct of Dr. Abbatinozzi to Defendant Life University.

## SEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

72.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1through 58 to the same force and effect as if set forth separately herein.

73.

The aforesaid conduct of Dr. Abbatinozzi was willful, wanton, extreme,

outrageous and intentionally directed and intended to cause Plaintiff emotional and

physical injury**.**

74.

The aforesaid actions of Dr. Abbatinozzi would naturally humiliate,

embarrass and outrage persons such as Ms. Belser and exceed all bounds of human

decency.

75.

The aforesaid conduct of Dr. Abbatinozzi caused Plaintiff extreme mental

suffering that no reasonable person could be expected to endure.

76.

Defendant Life University is liable for Dr. Abbatinozzi's aforesaid unlawful

conduct under the doctrine of *respondeat superior* and/or the theory of ratification

or condonation, and/or it is proper to impute the aforesaid unlawful conduct of Dr.

Abbatinozzi to Defendant Life University.

## EIGHTH CAUSE OF ACTION
### (Invasion of Privacy)

77.

Plaintiff re-alleges each and every allegation contained in Paragraphs

1through 58 to the same force and effect as if set forth separately herein.

78.

Dr. Abbatinozzi's aforesaid actions invaded Plaintiff's private affairs and seclusion, and constituted invasions of her privacy.

79.

Defendant Life University is liable for Dr. Abbatinozzi's aforesaid unlawful conduct under the doctrine of *respondeat superior* and/or the theory of ratification or condonation, and/or it is proper to impute the aforesaid unlawful conduct of Dr. Abbatinozzi to Defendant Life University.

## NINTH CAUSE OF ACTION
### (Negligent Retention)

80.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1through 58 to the same force and effect as if set forth separately herein.

81.

On information and belief, Defendant Life University negligently retained Dr. Abbatinozzi in a supervisory position from which it was reasonably foreseeable that he would sexually harass subordinate female students and employees.

82.

As a proximate result of the aforesaid negligence, Ms. Belser has suffered

and continues to suffer severe mental anguish and emotional distress.

## TENTH CAUSE OF ACTION
### (Breach of Contract)

83.

Plaintiff re-alleges each and every allegation contained in Paragraphs

1through 58 to the same force and effect as if set forth separately herein.

84.

Dr. Robert Fox falsely accused Ms. Belser of having cheated on an

examination.

85.

As a result of that false accusation, Ms. Belser failed "Radiology C" and has

been forced to retake that course.

86.

Also as a result of that false accusation, Ms. Belser has been forced to alter

her educational plan of study, which will cause her to incur additional tuition and

related costs and expenses.

87.

Also as a result of that false accusation, Life University has requested that

Ms. Belser sign an "academic contract" stating that Plaintiff failed "Radiology C"

twice and providing that a third failure in the course would result in Plaintiff being permanently expelled from Life University.

88.

On information and belief, applicable Life University guidelines and/or policies and/or applicable provisions of the Faculty Handbook provide that Dr. Fox should have reported his aforesaid accusation to a review board, where Ms. Belser would have had the opportunity to defend herself and disprove the false accusation.

89.

Life University's failure to the aforesaid false accusation considered by a review board amounts to breach of the contract between Plaintiff and Defendant Life University.  In the alternative, Life University's aforesaid failure constitutes a breach of the contract between Dr. Fox and the University contained in the applicable Life University guidelines and/or policies and/or applicable provisions of the Faculty Handbook and Ms. Belser is an intended beneficiary of that contract.

WHEREFORE, Plaintiff seeks the following relief:

1.  Appropriate declaratory and injunctive relief;

2.   Compensatory make-whole relief for Plaintiff's economic damages;

3.   Damages for mental anguish;

4.  Punitive damages;

5.  Attorneys' fees, expert witness fees, costs and disbursements of this action;

6.  Interest from an appropriate point until judgment is entered and post-judgment interest as may be proper;

7.   Such other and further relief as this Court deems appropriate; and

8.   Plaintiff demands TRIAL BY JURY.

This 16th day of April 2012.

            s/Robert N. Marx
            Georgia Bar Number 475280
            Jean Simonoff Marx
            Georgia Bar No. 475276
            Attorneys for Plaintiff
            Marx & Marx, L.L.C.
            5555 Glenridge Connector, Suite 200
            Atlanta, Georgia 30342
            Telephone:  (404) 261-9559
            E-mail:  lawyers@marxlaw.com